# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MAQUESTIA CANNADY** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. ____________________** |
| | § | |
| **CULINARY INSTITUTE INC. d/b/a** | § | |
| **CULINARY INSTITUTE LENOTRE** | § | **COMPLAINT AND JURY DEMAND** |
| | § | |
| ***Defendant*.** | § | |

**PLAINTIFF'S ORIGINAL PETITION**

Plaintiff MAQUESTIA CANNADY, (hereinafter, "Plaintiff"), complains of Defendant CULINARY INSTITUTE, INC. D/B/A CULINARY INSTITUTE LENOTRE ("Defendant"), and in support thereof, would respectfully show this Honorable Court as follows:

**THE PARTIES**

1. At all times relevant herein, Plaintiff MAQUESTIA CANNADY was enrolled in a culinary program at Culinary Institute Lenotre and is an adult resident citizen of Brazoria County, Texas with a residential address at 5305 Camerford Court, Allen, TX, 77511, USA .

2. At all times relevant herein, Defendant CULINARY INSTITUTE, INC. d/b/a CULINARY INSTITUTE LENOTRE (hereinafter "CIL") is a private institution of higher education in Houston, Texas. Defendant may be served through its registered agent for service, Alain Lenotre at 7070 Allensby, Suite 7070A, Houston, Texas 77022 or wherever she may be found.

3. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the

true names and capacities of such other responsible parties when their identities become known.

4. All of Plaintiff's claims stated herein are asserted against Defendant Culinary Institute Lenotre and any of its owners, predecessors, successors, subsidiaries, agents, and/or assigns.

**JURISDICTION & VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.).

6. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant Culinary Institute Lenotre maintains its principal place of business in Houston, Texas.

**FACTUAL BACKGROUND**

7. Defendant Culinary Institute Lenotre is a private institute of higher learning with a primary campus located in Houston, Texas.

8. Plaintiff, an African American woman and a 20-year United States Army veteran receiving 100% disability benefits, enrolled in CIL's Cuisine Diploma Program to advance her culinary training and career. Plaintiff has been diagnosed with Post-Traumatic Stress Disorder (PTSD), a condition known to be exacerbated by hostile or aggressive environments.

9. Throughout her enrollment, Plaintiff observed disparate treatment in the administration's response to conflicts involving students of different racial backgrounds. Plaintiff was consistently characterized as "aggressive" or "hostile" during administrative proceedings, whereas similarly situated non-Black students involved in disruptive conduct were not labeled or

treated with comparable scrutiny.

10. On or about March 21, 2024, Plaintiff was physically assaulted by another female student while on campus at 7070 Allensby Drive, Houston, Texas. Plaintiff promptly reported the assault to the Houston Police Department under Report No. 410201-24 and notified school administrators, placing CIL on notice of a potential safety threat and the need for appropriate protective accommodations. The school failed to adopt a safety plan in response.

11. On or about September 19, 2024, a male student identified as Cesar initiated a verbal altercation with Plaintiff, during which he directed sexually explicit and harassing remarks toward her. The nature of the comments were offensive, unwelcome, and created a hostile educational environment, thereby constituting conduct potentially in violation of institutional policy and applicable federal protections against harassment.

12. Chef Blair intervened and removed student Cesar from the room while Plaintiff was escorted to the breakroom.

13. Upon information and belief, shortly thereafter, both Plaintiff and the student identified as Cesar were permitted to return to class, resulting in their placement in close physical proximity despite the prior incident. During this time, Chef Blair made a dismissive remark suggesting that the conflict would resolve itself, stating, "you will be cool again next week." This comment trivialized the seriousness of the situation and further exacerbated Plaintiff's emotional distress by signaling the administration's unwillingness to address the matter with appropriate seriousness and sensitivity.

14. Prior to the conclusion of class, Chef Blair instructed Plaintiff to prepare and submit a written statement via email detailing the incident in question. In compliance with this directive, Plaintiff submitted the requested statement on or about September 21, 2024.

15. On or about September 23, 2024, Plaintiff was contacted by Chef Christelle Pradat

and asked to attend an in-person meeting ostensibly to discuss her well-being. Upon arrival, Plaintiff was surprised to find the meeting included Chef Stephanie Lamour, who did not inform her in advance of her participation.

16. Upon arriving at the South Building of Culinary Institute Lenotre (CIL), Plaintiff was directed to a conference room where she met with Chef Christelle and Chef Stephanie, the latter serving in her official capacity as Director of the Cuisine Department. The meeting was convened without prior notice of its purpose, contributing to Plaintiff's sense of uncertainty and procedural disadvantage. Plaintiff felt ambushed, particularly in light of previous unresolved safety and grading issues involving Chef Stephanie.

17. During the course of the meeting, Plaintiff repeatedly recounted the events of September 19, 2024, including the disruptive conduct of a student named Cesar and, most notably, his use of a sexually explicit remark. Plaintiff emphasized the severity and impact of the incident, seeking acknowledgment and appropriate institutional response. Her detailed account was intended to ensure that the administration fully understood the nature and gravity of the misconduct.

18. Plaintiff reiterated that she was the target of sexually harassing behavior. Chef Stephanie minimized the complaint, stating the language used was "just profanity," and redirected blame onto Plaintiff by criticizing her demeanor as "aggressive." Plaintiff was not offered a fair or impartial process to have her concerns formally acknowledged.

19. Rather than receiving an empathetic or remedial response to her concerns, Plaintiff's account of the harassment was summarily minimized by Chef Stephanie, who characterized the offensive language as 'just profanity' and accused Plaintiff of responding in an aggressive manner. This dismissive and reductive treatment of Plaintiff's complaint exacerbated her sense of isolation and eroded her trust in CIL's willingness and capacity to address incidents

of harassment in a meaningful and compliant manner.

20. Following the conclusion of the administrative meeting, Plaintiff attempted to resume her regular class attendance in the North Building. However, within approximately five minutes of entering the premises, Plaintiff was forcibly escorted from the building by security personnel employed by Culinary Institute Lenotre. This sudden and public removal occurred without prior notice or explanation, further contributing to Plaintiff's emotional distress and academic disruption.

21. Disturbed by the abrupt and unexplained administrative intervention involving campus security, Plaintiff promptly sent an email to Chefs Stephanie, Christelle, and Blair requesting a formal explanation regarding the circumstances and justification for the security involvement. This outreach reflected Plaintiff's attempt to seek clarity and accountability through appropriate institutional channels.

22. Subsequently, Chef Stephanie informed Plaintiff that she had been suspended for a period of two days. Plaintiff contends that this disciplinary action was not based on legitimate grounds, but rather constituted a retaliatory measure in response to her candid and forthright recounting of the events in question. Such retaliation further evidences the administration's disregard for procedural fairness and its failure to address the underlying issues in good faith.

23. On Thursday, September 26, 2024, amidst ongoing concerns about the impact of these incidents on her academic progress (especially as a VA student who cannot afford extended absences), Plaintiff received a last-minute request from CIL to attend another meeting.

24. During the meeting, Plaintiff was presented with a pre-prepared "incident details" document authored by the administration. Upon review, Plaintiff identified multiple inaccuracies within the document and proceeded to annotate it by underlining the contested language and providing clarifying remarks in the margins. These annotations were intended to correct the

record and ensure that Plaintiff's perspective was accurately reflected in the documentation of the incident.

25. CIL staff declined to acknowledge or sign the annotated "incident details" document, thereby disregarding Plaintiff's corrections and clarifications. This refusal effectively excluded Plaintiff's account from the official record, reinforcing a narrative that minimized the severity of the alleged harassment and undermined the integrity of the investigative process.

26. During the same administrative session, Plaintiff raised additional concerns regarding an incident in which a student named Cesar directed a degrading and sexually inappropriate comment toward another female student, referring to her as "flat chested." Plaintiff identified the conduct as potentially constituting a violation under Title IX and brought it to the attention of the administration. However, the administration summarily dismissed the concern, asserting that any further action would be solely at the discretion of the affected student, thereby minimizing the seriousness of the misconduct and failing to fulfill its obligations under federal anti-discrimination laws.

27. Following the administrative meeting held on or about September 26, 2024, Plaintiff expressed her intent to resume class attendance in an effort to mitigate further academic disruption. Despite this valid and timely request, school officials barred Plaintiff from attending class that day and refused to acknowledge her presence for attendance purposes. This denial not only lacked justification but also further exacerbated the academic harm suffered by Plaintiff, compounding the adverse effects of the ongoing disciplinary process.

28. On or about Monday, September 30, 2024, Plaintiff received formal notification from Chef Stephanie Lamour that her enrollment at Culinary Institute Lenotre (CIL) had been suspended. This disciplinary action, when considered in conjunction with the preceding incidents and the administration's persistent failure to acknowledge or remediate the substantive procedural

and discriminatory concerns raised by Plaintiff, has resulted in substantial academic disruption, emotional distress, and financial hardship. The cumulative effect of these actions constitutes a breach of the duty owed to Plaintiff and a failure to provide a fair and equitable educational environment.

29. Throughout her enrollment, Plaintiff was disproportionately labeled “aggressive” during disciplinary processes—language embedded with racial bias and commonly used to diminish and discredit Black women in professional and academic contexts.

30. In contrast to Plaintiff’s treatment, students of different racial backgrounds involved in disruptive or violent conduct were not subject to comparable disciplinary action. The male student, Cesar, who directed sexually explicit remarks at Plaintiff, remained enrolled and active in the program despite multiple documented incidents. Similarly, the female student who physically assaulted Plaintiff on or about March 21, 2024, an attack which resulted in a police report, was also permitted to return to campus. In both instances, CIL failed to take meaningful corrective action or implement safety accommodations for Plaintiff, while disproportionately penalizing her for responding to misconduct directed against her.

31. Plaintiff made every reasonable effort to cooperate with institutional processes, including submitting written statements, attending requested meetings, and preparing coursework. Despite these efforts, the school failed to fairly investigate her concerns, ignored corroborating evidence, and proceeded with punitive actions unsupported by neutral fact-finding.

32. Defendant, through its agents and employees, failed to take any corrective action to address the procedural deficiencies, the discriminatory nature of the allegations and disciplinary proceedings, the issuance of inadequate and untimely notices, the imposition of a disproportionate disciplinary sanction, and the public and premature removal of Plaintiff from campus by security personnel prior to Plaintiff receiving formal notice of suspension. Such

failures collectively deprived Plaintiff of a fair and impartial process, in violation of the institution's own policies and the reasonable expectations arising from the student-institution relationship.

33. Plaintiff was unexpectedly and publicly removed from class by campus security personnel, an act that occurred in the presence of fellow students and faculty members. This abrupt and highly visible removal subjected Plaintiff to public humiliation and embarrassment, thereby causing significant emotional distress. The manner in which this action was executed lacked discretion and sensitivity, further exacerbating the harm inflicted upon Plaintiff.

34. Plaintiff, as an enrolled student at the Culinary Institute Lenotre, reasonably relied upon the institution's representations and assurances that it would adhere to the policies and procedures set forth in the Student Handbook, which forms part of the contractual relationship between the parties.

35. Defendant Culinary Institute Lenotre (CIL) owed Plaintiff a duty to adhere to its established disciplinary policies and procedures by virtue of the special relationship that existed between the parties. This special relationship arose when Plaintiff, having been accepted for enrollment, entrusted CIL to provide educational services in accordance with the terms and conditions set forth in the Student Handbook. Said policies and procedures constituted an integral part of the contractual and fiduciary framework governing the student-institution relationship. However, CIL breached this duty by engaging in an investigative and disciplinary process that was arbitrary, capricious, and devoid of fundamental fairness, thereby depriving Plaintiff of the protections and assurances reasonably expected under the institutional policies.

36. CIL had the resources necessary to prevent the breach of contract but neglected to follow the policies and procedures as outlined in the Student Handbook. CIL also intentionally and negligently refused to consider the Plaintiff's supporting and controverting evidence and

witness statements and the due process requirements set forth in the CIL Student Handbook. Accordingly, CIL breached its common law, statutory, and other duties owed to Plaintiff.

**COUNT I**
**BREACH OF EXPRESS CONTRACT**
**Violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.)**
**(Sexual Harassment and Retaliation)**

37. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

38. Defendant Culinary Institute Lenotre ("CIL") is a recipient of federal financial assistance and is, therefore, subject to the requirements of Title IX of the Education Amendments of 1972 and its implementing regulations, which prohibit discrimination on the basis of sex in educational programs and activities.

39. On or about September 19, 2024, Plaintiff was subjected to an act of sexual harassment when a male student, Cesar, directed an explicit, sexually degrading comment at her in a classroom setting. The comment - *"suck my d---"* - was made loudly, in front of peers and faculty, and without provocation, thereby creating an objectively hostile and offensive educational environment.

40. The harassment was unwelcome, severe, and interfered with Plaintiff's ability to participate in and benefit from the educational opportunities provided by CIL.

41. Defendant was put on notice of the sexual harassment through Plaintiff's contemporaneous verbal report to Chef Blair, her written statement submitted on or about September 21, 2024, and repeated disclosures during subsequent administrative meetings. Despite this notice, CIL failed to initiate an adequate investigation, implement interim safety measures, or hold the offending student accountable.

42. Instead of offering support, Defendant minimized the severity of the incident through remarks such as "you will be cool again next week" and characterizations of the sexual

comment as "just profanity," demonstrating deliberate indifference to Plaintiff's report.

43. On or about September 23 and 26, 2024, Plaintiff participated in two additional administrative meetings during which her experience was further dismissed, her tone and demeanor were unfairly criticized, and she was pressured to accept fault for a situation in which she had been the target of harassment.

44. Defendant retaliated against Plaintiff for reporting the incident and asserting her rights under Title IX by:

a. Publicly removing her from class via security personnel;

b. Imposing an unexplained two-day suspension;

c. Refusing to implement a safety plan despite repeated requests;

d. Denying her return to class following administrative meetings;

e. Ultimately suspending her enrollment, barring her from academic participation and program completion.

45. Defendant's actions, individually and collectively, constitute unlawful retaliation under Title IX, as they were materially adverse and would dissuade a reasonable student from reporting harassment or asserting their rights under federal law.

46. As a direct and proximate result of Defendant's violations of Title IX, Plaintiff has suffered and continues to suffer emotional distress, humiliation, academic disruption, reputational harm, and loss of educational opportunity.

47. Plaintiff is entitled to all relief available under law, including but not limited to declaratory and injunctive relief, compensatory damages, attorneys' fees and costs, and such further relief as the Court or agency deems just and proper.

## COUNT II
## BREACH OF EXPRESS CONTRACT

48. Plaintiff hereby repeats all of the allegations and Exhibits contained in the

Complaint thus far above and incorporates same as if fully set forth at length herein.

49. At all times relevant hereto, Defendant held itself out to the public as licensed and professional institute of higher education, capable, honest, and knowledgeable enough to provide proper and professional educational services to the public.

50. Plaintiff entered into contracts with Defendant when she agreed to attend CIL and pay tuition to CIL.

51. The student handbook acts as a regulatory document that requires compliance by faculty, staff, and visitors. Noncompliance or violations of the student handbook may result in disciplinary actions, including sanctions, suspension, or termination from the CIL educational or nursing program. The student handbook was presented to Plaintiff during the admission process and her acceptance of the student handbook's contents was required as a condition of enrollment. As such, the student handbook acts as a contract between CIL and the Plaintiff.

52. Upon information and belief, these contracts included promises made by Defendant that expressed and/or manifested intent that the contracts were made to primarily and directly benefit Plaintiff, as Defendant's service was to provide education services in exchange for tuition payments from Plaintiff. As part of this contract, Defendant had a duty to provide students, faculty, and staff with a safe university environment and to comply with the rules, regulations, and policies established in the contract and the student handbook.

53. Upon information and belief, Defendant's representations required Plaintiff and Defendant to comply with policies, procedures, and code of conduct as outlined in the student handbook.

54. Upon information and belief, Defendant materially breached its contractual obligation to provide students, faculty, and staff with a safe university environment by forcibly escorting an enrolled student, without proper notice, under guard, and in a manner that provoked

fear and public humiliation for Plaintiff.

55. Upon information and belief, Defendant materially breached its contractual obligation by failing to comply with the disciplinary process as outlined in the student handbook. The unnoticed removal of Plaintiff from a class she was attending and had paid for equates to a disciplinary action, but no disciplinary hearing results notice was served prior to the Plaintiff's removal as required by CIL stated policies and procedures.

56. Upon information and belief, Defendant materially breached its contractual obligation by failing to comply with the disciplinary process as outlined in the student handbook. The allegations against the Plaintiff were not amended after the preliminary meeting and were never addressed in an informal manner, with a goal of restoration and resolution, as is standard practice of CIL prior to escalation as stated in their student handbook.

57. Upon information and belief, Defendant materially breached its contractual obligations and duty of care by permitting a student who had previously assaulted Plaintiff on campus to return to the educational environment without implementing any meaningful safeguards to protect Plaintiff's physical and emotional well-being. This decision, made despite the prior report of assault and the existence of a police report, was arbitrary and capricious and demonstrated a reckless disregard for Plaintiff's safety. By failing to take reasonable steps to prevent further harm, Defendant violated the express and implied terms of the student handbook, which guarantees a safe and supportive learning environment, and thereby undermined Plaintiff's trust in the institution's commitment to student welfare.

58. Upon information and belief, Defendant materially breached its contractual obligations by failing to adhere to the disciplinary procedures set forth in the Student Handbook. Specifically, Defendant either intentionally or negligently disregarded relevant evidence and testimony that substantiated Plaintiff's innocence and would have negated the allegations made

against her. This failure constitutes a violation of both the Student Handbook and the institution's Code of Conduct, thereby undermining the integrity of the disciplinary process and breaching the duty of good faith and fair dealing owed to Plaintiff.

59. Upon information and belief, the breaches were reasonably foreseeable consequences of Defendant's actions in breach of these contracts and the CIL student handbook.

60. As a direct and proximate result of the Defendant's breach, Plaintiff has been harmed and has suffered, and will continue to suffer, actual damages and injuries, including without limitation Plaintiff's academic career, monetary loss, future employment, good name, reputation, and emotional distress.

## COUNT III
## BREACH OF IMPLIED CONTRACT

61. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

62. At all times relevant hereto, Defendant held itself out to the public as licensed and professional institute of higher education, capable, honest, and knowledgeable enough to provide proper and professional educational services to the public.

63. Plaintiff entered into contracts with the defendant when she agreed to attend CIL and pay tuition to CIL.

64. The student handbook acts as a regulatory document that requires compliance by faculty, staff, and visitors. Noncompliance or violations of the student handbook can result in disciplinary conduct that can result in sanctions, suspension, or termination from the CIL educational and or nursing program. The student handbook was presented to Plaintiff during the admission process and her acceptance of its contents was required as a condition of enrollment. As such, the student handbook acts as a contract between CIL and the Plaintiff.

65. Defendant entered into implied contracts with Plaintiff, separate and apart from any

express agreements, for the provision of fair and consistent disciplinary procedures, including adequate notice, hearings, and disposition, as specifically outlined in the Student Handbook. As part of this implied contractual relationship, Defendant was obligated to take reasonable steps to safeguard Plaintiff's due process rights. However, Defendant's failure to adhere to these procedures, through Defendant's arbitrary and capricious actions, constituted a breach of its duty of good faith and fair dealing, thereby depriving Plaintiff of the protections reasonably expected under the student-institution relationship.

66. Defendant owed Plaintiff an implied duty of good faith and fair dealing to ensure that her due process rights were upheld in accordance with the contractual obligations and procedures outlined in the student handbook. Defendant's failure to provide a fair and impartial process, characterized by arbitrary and capricious decision-making, constituted a breach of this duty and deprived Plaintiff of the protections reasonably expected under the student-institution relationship.

67. Upon information and belief, Defendant breached the implied contractual obligation to provide a safe and secure educational environment by allowing a student who had previously assaulted Plaintiff to return to campus without implementing adequate protective measures. This action, taken despite prior notice of the assault and the existence of a police report, demonstrated a disregard for Plaintiff's safety and well-being.

68. The implied contract between Plaintiff and Defendant, arising from Plaintiff's enrollment and the institution's representations, reasonably included an expectation that the school would act in good faith to protect students from foreseeable harm. Defendant's failure to do so was arbitrary, capricious, and inconsistent with the duty of care owed to Plaintiff under the student-institution relationship.

69. Upon information and belief, the breaches were reasonably foreseeable

consequences of Defendant's actions in breach of these contracts and the CIL student handbook.

70. Defendant breached its implied contractual obligations and duty of good faith by failing to properly evaluate the evidence submitted by Plaintiff, failing to provide timely and adequate notice of her suspension, and failing to maintain a safe and supportive learning environment free from threats of violence and harassment. Furthermore, Defendant subjected Plaintiff to a public and humiliating removal from the classroom by campus security and denied her access to a disciplinary process free from arbitrary and capricious decision-making. These cumulative failures deprived Plaintiff of a meaningful opportunity to defend herself against false allegations, protect her personal safety, and mitigate the resulting harm. As a direct and proximate result, Plaintiff suffered exacerbated emotional trauma, including fear, public humiliation, and lasting psychological distress.

## COUNT IV
## DUE PROCESS VIOLATIONS

71. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

72. At all times relevant hereto, Defendant held itself out to the public as a licensed and professional institute of higher education, capable, honest, and knowledgeable enough to provide proper and professional educational services to the public.

73. Upon information and belief, Defendant accepts and receives financial aid from government treasuries including but not limited to scholarships, fellowships, and federal student loans. Defendant also receives indirect governmental financial aid in the form of tax-exemptions and the use or loan of public land.

74. Plaintiff entered into contracts with Defendant when he agreed to attend CIL and pay tuition to CIL.

75. Defendant established extensive investigative, hearing, and disciplinary

procedures, among other policies and codes of conduct, which are outlined in detail in the student handbook.

76. The student handbook acts as a regulatory document that requires compliance by faculty, staff, and visitors. Noncompliance or violations of the student handbook can result in disciplinary conduct that can result in sanctions, suspension, or termination from the CIL educational and/or nursing programs. The student handbook was presented to Plaintiff during the admission process and her acceptance of its contents was required as a condition of enrollment. As such, the student handbook acts as a contract between CIL and the Plaintiff.

77. The Culinary Institute Lenotre (CIL) student handbook expressly outlines students' due process rights, which include, but are not limited to, the right to receive timely and adequate notice of allegations, the right to a hearing, the right to post-hearing notifications, the right to a fair and proportionate disciplinary determination, and the right to appeal adverse decisions. These procedural safeguards form a critical component of the implied contractual relationship between the institution and its students, and any deviation from these standards, particularly through arbitrary or capricious conduct, constitutes a breach of that relationship.

78. Defendant owed Plaintiff a duty to conduct disciplinary proceedings in good faith and in a manner that was not arbitrary, capricious, or fundamentally unfair.

79. On or about July 7, 2022, while Plaintiff was in class, a professor and campus security escorted Plaintiff out of the building. This act occurred before Plaintiff was informed of the results of the hearing.

80. The Plaintiff was denied due process, which requires that an investigation and hearing take place before disciplinary actions are enforced. Due process also mandates that any evidence submitted in defense of the accused student be reviewed and fairly evaluated in determining their right to defense and proof against the allegations.

81. Upon information and belief, Defendant breached this implied contract and duty of fair procedure by:

a. Failing to provide Plaintiff with timely and adequate notice of the allegations and disciplinary action;
b. Failing to consider exculpatory evidence and testimony submitted by Plaintiff;
c. Subjecting Plaintiff to a public and humiliating removal from class by campus security without prior notice or justification;
d. Allowing a student who had previously assaulted Plaintiff to return to campus, thereby jeopardizing her safety;
e. Conducting an investigative and disciplinary process that was arbitrary, capricious, and devoid of fundamental fairness.

82. On or about September 23, 2024, while Plaintiff was attending class, Plaintiff was summarily removed from the premises by campus security personnel. This removal occurred prior to Plaintiff receiving formal written notice of any disciplinary findings or sanctions resulting from the prior meeting, and in the absence of any duly convened disciplinary hearing. Such action constituted a deprivation of Plaintiff's protected interests without affording the requisite procedural safeguards, including notice of the charges, an opportunity to be heard, and adjudication by an impartial decision-maker, in violation of Plaintiff's right to due process under the policies, procedures, and contracts established by CIL.

83. Additionally, removing Plaintiff from class without such procedural protections was arbitrary and capricious, lacking any rational basis or consideration of relevant facts and circumstances, and constituted an abuse of discretion by the institution.

84. Defendant had a contractual and implied duty of good faith to ensure that Plaintiff's due process rights were protected and provided in accordance with its contractual obligations, the student handbook, and state and federal statutes.

85. By failing to carefully consider the evidence submitted by Plaintiff and by failing

to properly notify Plaintiff of the suspension prior to the Plaintiff being forcibly escorted off the premises, Defendant exacerbated her injuries. Specifically, by depriving her of her due process rights during the hearing and disciplinary process which impacted Plaintiff's ability to protect herself and mitigate harm. Defendant exacerbated Plaintiff's injuries with the forced public removal that occurred without proper due process or notice and left the Plaintiff suspended from school, scared, publicly humiliated, and emotionally distressed.

**COUNT V**
**NEGLIGENCE**

86. Plaintiff hereby repeats all of the allegations and exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

87. At all times relevant hereto, Defendant held itself out to the public as licensed and professional institute of higher education, capable, honest, and knowledgeable enough to provide proper and professional educational services to the public.

88. Plaintiff entered into contracts with the defendant when he agreed to attend CIL and pay tuition to CIL.

89. At all times relevant, Defendant owed a duty of care to Plaintiff because it was foreseeable that Defendant's failure to adequately safeguard the Plaintiff's due process rights, personal safety and security, and academic success in accordance with the student handbook, contracts, assignments, and state and federal statutes would compromise the Plaintiff's personal reputation, academic success, and ability to properly defend himself during the hearing process.

90. At all times relevant, Defendant Culinary Institute Lenotre (CIL) owed Plaintiff a legal duty to exercise reasonable care in the administration of its educational programs, disciplinary procedures, and campus safety protocols. This duty arose from the special relationship between the institution and its enrolled students, including Plaintiff, and was further defined by the policies and procedures set forth in the Student Handbook and applicable institutional

standards.

91. Defendant breached this duty by engaging in conduct that a reasonably prudent institution would not have undertaken under the same or similar circumstances, including but not limited to:

a. Failing to investigate or appropriately respond to Plaintiff's reports of harassment and assault;
b. Publicly and abruptly removing Plaintiff from class without prior notice or justification;
c. Refusing to acknowledge or incorporate Plaintiff's corrections to the "incident details" document;
d. Dismissing Plaintiff's concerns regarding additional instances of sexual harassment without investigation;
e. Denying Plaintiff access to class and failing to record her attendance without cause;
f. Suspending Plaintiff without affording her the procedural protections promised in institutional policies.

92. Defendant acted with wanton and reckless disregard for the due process rights and fair hearing elements of Plaintiff by refusing to consider evidence submitted for her defense which directly controverted the claims of her instructor. This duty is required and necessary for Plaintiff to take appropriate measures to protect her due process rights, to protect her reputation and good name, to protect her academic career, to protect her future employment prospects, and to take other necessary steps to mitigate the harm caused by the false allegations and publicly performed removal from the building by campus security.

93. Defendant acted with wanton and reckless disregard for the safety and security and public reputation of Plaintiff by forcibly removing her from her classroom by campus security, without proper notice and in a fashion that that created a public spectacle.

94. Defendant owed a duty to Plaintiff to timely and accurately conduct an impartial investigation and hearing before the disciplinary suspension of Plaintiff from her academic pursuit and campus. This duty is required and necessary for Plaintiff to take appropriate measures to protect her due process rights, to protect her reputation and good name, to protect her academic career, to protect her future employment prospects, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the allegations and forced removal from the classroom building and campus.

95. Defendant owed a duty to Plaintiff to protect her due process rights, including the obligation to provide timely and adequate notice of any allegations and to conduct a fair and impartial hearing prior to implementing any disciplinary action. This duty was essential to enable Plaintiff to take appropriate measures to protect her safety and security, safeguard her reputation and good name, preserve her academic standing, and mitigate the harm caused by the allegations and her public removal from campus by security personnel. Defendant's failure to fulfill this duty, by removing Plaintiff from class without notice, denying her a hearing, and imposing disciplinary sanctions without procedural safeguards, was not only a violation of due process but also constituted arbitrary and capricious conduct. Defendant acted without a rational basis, disregarded relevant facts and procedures, and imposed sanctions in a manner that was unreasonable, retaliatory, and inconsistent with its own policies and the expectations of fairness owed to Plaintiff under Texas law.

96. Defendant owed a duty to Plaintiff and knew or should have known would suffer injury-in-fact from Defendant's reckless and wanton disregard for Plaintiff's due process rights and personal safety and security.

97. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered or will suffer damages, including monetary damages, embarrassment, humiliation, frustration,

emotional distress, and damage to her ability for academic advancement and employment.

98. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff actual, tangible, injury-in-fact and damages, including, without limitation, lost benefit of her bargain, lost reputation, lost benefit from academic advancement and future employment, emotional distress and anguish, and lost time and money incurred to mitigate and remediate the effects of the denial of due process and forced public removal from campus that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which she continues to face and receive medical treatment.

## COUNT VI
## DISCRIMINATION

99. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

100. At all times relevant hereto, Defendant held itself out to the public as licensed and professional Christian institute of higher education, capable, honest and knowledgeable enough to provide proper and professional educational services to the public and in compliance with the provisions of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

101. Upon information and belief, Defendant accepts and receives financial aid from government treasuries including but not limited to scholarships, fellowships, and federal student loans. Defendant also receives indirect governmental financial aid in the form of tax-exemptions and the use or loan of public land.

102. Plaintiff, as an African American female, is a member of a protected class as defined under Title VI of the Civil Rights Act of 1964.

103. Plaintiff, an African American female student and United States Army veteran, was enrolled at Culinary Institute Lenotre (CIL), a private educational institution that receives federal

financial assistance and is therefore subject to the provisions of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

104. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, and national origin in any program or activity receiving federal financial assistance.

105. Upon information and belief, Defendant, through its agents and employees, engaged in discriminatory conduct against Plaintiff on the basis of her race, including but not limited to:

a. Failing to investigate or take remedial action in response to Plaintiff's report of racially and sexually harassing conduct by a fellow student;
b. Dismissing Plaintiff's concerns and minimizing the severity of the misconduct, including characterizing explicit and degrading language as "just profanity."
c. Refusing to acknowledge or incorporate Plaintiff's corrections to the official incident report, thereby excluding her account from the institutional record;
d. Subjecting Plaintiff to disparate treatment by removing her from class and suspending her without due process, while failing to impose comparable disciplinary measures on similarly situated non-African American students;
e. Ignoring Plaintiff's report of additional inappropriate conduct directed at another female student, thereby perpetuating a racially hostile educational environment.

106. Upon information and belief, Defendant's actions were not only discriminatory but also arbitrary and capricious, lacking any rational basis and executed in disregard of Plaintiff's rights and the institution's own policies. Plaintiff asserts that the Defendant violated her right to due process by disregarding her evidence and dismissing her complaints, further perpetuating discriminatory treatment rooted in race.

107. Upon information and belief, Defendant failed to evaluate Plaintiff's evidence during the hearing, which adversely affected her ability to defend herself during the disciplinary hearing and resulted in her suspension and public forced removal from CIL.

108. Upon information and belief, Defendant denied Plaintiff access to the minimum procedural protections before issuing significant disciplinary decisions which adversely affected her ability to defend herself during the disciplinary hearing and resulted in her suspension and public forced removal from CIL.

109. Upon information and belief, Defendant denied Plaintiff access to fair hearing procedures by failing to provide unbiased decisions makers and restricting the presentation of evidence during the hearing, which adversely affected her ability to defend himself during the disciplinary hearing and resulted in her suspension and public forced removal from CIL.

110. Upon information and belief, Defendant's conduct deprived Plaintiff of the full and equal benefit of the contractual relationship between student and institution, in violation of 42 U.S.C. § 1981, and denied her the protections guaranteed under Title VI of the Civil Rights Act.

111. By failing to properly recognize, address, or remedy the systemic barriers and racially discriminatory nature of the accusations and disciplinary procedures, Defendant exacerbated Plaintiff's injuries. Specifically, Defendant deprived Plaintiff, a Black female student, of a disciplinary process that was fair, impartial, and free from arbitrary and capricious conduct. Defendant failed to provide timely and adequate notice of the allegations, denied Plaintiff the opportunity to present evidence in her defense, and permitted a student who had previously assaulted her to return to campus without consequence.

112. These actions were taken without a rational basis, in disregard of relevant facts and established procedures, and in a manner that prejudiced Plaintiff's substantial rights. Such conduct constitutes a violation of Plaintiff's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Texas common law principles of fairness and due process.

113. Furthermore, Defendant failed to consider the harmful effects of unsubstantiated allegations and improperly noticed disciplinary actions, including the public and abrupt removal

of Plaintiff from class by campus security. Defendant also disregarded the need for appropriate procedural safeguards and accommodations during the disciplinary process. These failures reflect a pattern of discriminatory practices that compounded Plaintiff's injuries, leaving her suspended from school, emotionally distressed, publicly humiliated, and without meaningful opportunity to defend herself against unjust and racially biased treatment.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

115. At all times relevant hereto, Defendant held itself out to the public as licensed and professional Christian institute of higher education, capable, honest, and knowledgeable enough to provide proper and professional educational services to the public.

116. Defendant intentionally and/or recklessly inflicted emotional distress upon the Plaintiff by purposefully interfering with Plaintiff's due process rights and by purposefully and intentionally failing to rectify the many problems associated with disciplinary notice and hearing process conducted by the Defendant and its agents and employees.

117. Defendant intentionally and/or recklessly inflicted emotional distress upon the Plaintiff by purposefully and publicly removing Plaintiff from a CIL educational building by campus security without providing proper notice of the disciplinary results, and by purposefully and intentionally failing to rectify the many problems associated with the suspension notice and removal process conducted and overseen by the Defendant and its agents and employees.

118. Defendant intentionally and/or recklessly inflicted emotional distress upon the Plaintiff by purposefully refusing to evaluate evidence that contradicted the claims during the preliminary meeting, and by purposefully and intentionally failing to rectify the many problems

associated with the suspension notice, the Plaintiff's public removal from campus by security, and the arbitrary and capricious investigative process conducted and overseen by Defendant and its agents and employees.

119. Defendant intentionally and/or recklessly inflicted emotional distress upon the Plaintiff by purposefully targeting and retaliating against Plaintiff because of her race and by purposefully and intentionally failing to rectify the many problems associated with the discriminatory treatment, the suspension notice, the Plaintiff's public removal from campus by security, and the investigative process conducted and overseen by the Defendant and its agents and employees.

120. The infliction of emotional distress was preventable had the Defendant lived up to its duty of care as arising under their policies and procedures, the student handbook, and under common law, statue, and rule, as aforesaid.

121. This conduct by Defendant – especially given (1) the fact that said Defendant held itself out to the public as professional institute of higher learning, capable and knowledgeable enough to provide proper and professional educational services to the public, and (2) that Defendant knew, or should reasonably know, that their customer base may include individuals of various genders and races, is conduct so extreme and outrageous as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community. Defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency that infliction of mental anguish is presumed once the right to due process being interfered with is shown.

122. Defendant's acts as alleged herein were committed either with actual malice and intent to inflict on Plaintiff the very harm she suffered as a result of these acts by Defendant, or with reckless, wanton, and willful disregard of the possibility of inflicting on Plaintiff the very

harm she suffered as a result of these acts by the Defendant.

123. Because no other adequate remedy exists under more specific tort doctrines for the full scope of Defendant's egregious conduct, Plaintiff asserts this claim for intentional infliction of emotional distress as a supplemental cause of action.

124. As a direct and proximate result of Defendant's intentional and/or reckless conduct as aforesaid, Plaintiff was caused to sustain damages, including, but not limited to, emotional distress and anguish so severe that no reasonable person could be expected to endure it.

## PRAYER FOR RELIEF

125. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff, MAQUESTIA CANNADY, demands judgment against the Defendant, CULINARY INSTITUTE, INC. D/B/A CULINARY INSTITUTE LENOTRE, and in the alternative, for alternative, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## JURY DEMAND

126. Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION

125. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

Dated: May 29, 2026

**LLG NATIONAL LAW GROUP**

_*/s/ Renee Walker*_____________
ATTORNEY, ESQUIRE
SB. No. 16958480
PHOENIX CORPORATE TOWER
3003 North Central Ave. Ste 685
(888)826-6580 (T)
(707)215-3600 (F)
Renee.walker@llgnational.com
*Attorney for Plaintiff*

# VERIFICATION

STATE OF TEXAS §
§
HARRIS COUNTY §

Before me, the undersigned notary, on this day personally appeared MAQUESTIA CANNADY, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Maquestia Cannady. I am capable of making this verification. I have read this Original Petition and Jury Demand. The facts stated in it are within my personal knowledge and are true and correct."

Maquestia Cannady
MAQUESTIA CANNADY

SWORN AND SUBSCRIBED before me on this day of 29th MAY, 2026.

Meah Amor Rodriguez
Notary Public, State of Texas

MEAH AMOR RODRIGUEZ
Notary Public, State of Texas
Comm. Expires 12-24-2028
Notary ID 135211955