**IN THE UNITED STATES
DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF
TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **MAQUESTIA CANNADY** | § | |
| *Plaintiff,* | § | |
| | § | **C.A. No. 4:26-cv-04341** |
| **v.** | § | |
| | § | |
| **CULINARY INSTIUTE INC. d/b/a** | § | |
| **CULINARY INSTITUTE LENOTRE** | § | |
| *Defendant* | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I. PLAINTIFF'S TITLE IX AND TITLE IX RETALIATION CLAIMS

**Introduction**

Defendant's motion improperly asks the Court to resolve factual disputes and discount well-pleaded allegations at the Rule 12(b)(6) stage. The Complaint alleges that **Culinary Institute Lenotre ("CIL") receives federal financial assistance** and that Plaintiff was enrolled in CIL's culinary program. It further alleges that Plaintiff reported a male classmate's sexually explicit statement directed at her; identified a second degrading, sex-based statement by the same student toward another female student; and expressly invoked Title IX concerns. Rather than provide a fair process or protective response, CIL's administrators allegedly minimized the sexually explicit conduct as "just profanity," characterized Plaintiff as "aggressive," removed her from campus through security, suspended her, barred her from class, rejected her corrections to CIL's account of the incident, and suspended her enrollment.

Those allegations plausibly state a Title IX retaliation claim. They also plausibly allege sex-based peer harassment and an institutionally discriminatory response that left Plaintiff vulnerable in a required classroom setting and deprived her of educational access. At minimum, the Complaint gives CIL fair notice of the claims and their factual basis. The motion should be denied.

**Allegations Material to This Motion**

For purposes of this motion, the Court must accept the Complaint's well-pleaded facts as true and draw reasonable inferences in Plaintiff's favor. Plaintiff alleges, among other things:

1. Plaintiff was an enrolled adult student in CIL's culinary program, and CIL receives federal financial assistance. Compl. ¶¶ 38, 73.
2. On September 19, 2024, a male student, Cesar, initiated a verbal altercation and directed sexually explicit and harassing remarks of "Suck my D___" at Plaintiff. A chef initially removed Cesar from the room, but CIL soon allowed both students to return to class in close proximity. Compl. ¶¶ 11–13.
3. Plaintiff promptly complied with the instruction to provide a written incident statement. Compl. ¶ 14.
4. At the September 23, 2024 meeting, Plaintiff again reported the sexually explicit statement and explained that she was the target of sex-based harassment. The Cuisine Department Director allegedly minimized the report as "just profanity," instead labeled Plaintiff "aggressive," and did not offer a fair or impartial process. Compl. ¶¶ 15–19.

5. Immediately after that meeting, CIL security publicly removed Plaintiff from campus. CIL then imposed a two-day suspension. Compl. ¶¶ 20–22.
6. At the September 26 meeting, Plaintiff corrected inaccuracies in CIL's pre-prepared "incident details" document. CIL refused to acknowledge or sign her annotations. Plaintiff also reported that Cesar had made a degrading, sex-based remark about another female student, calling her "flat chested," and identified the conduct as a potential Title IX violation. CIL dismissed the report and stated that further action was solely the other student's choice. Compl. ¶¶ 23–26.
7. CIL barred Plaintiff from attending class on September 26, refused to credit her attendance, and then suspended her enrollment on September 30. Compl. ¶¶ 27–28.
8. By contrast, Cesar allegedly remained enrolled and active in the program after multiple documented incidents, and a student who physically assaulted Plaintiff in March 2024 was permitted to return to campus. Compl. ¶¶ 10, 30.
9. CIL's administrators also allegedly characterized Plaintiff, a Black woman, as "aggressive" or "hostile" during disciplinary processes while not subjecting similarly situated non-Black students involved in disruptive or violent conduct to comparable scrutiny or discipline. Compl. ¶¶ 9, 29–32.

**Applicable Rule 12(b)(6) Standard**

A complaint need not prove the claim at the pleading stage. It need only allege enough factual matter to state a plausible claim for relief. The Court must accept well-pleaded facts as true and may not resolve competing accounts, assess witness credibility, or select CIL's explanation over Plaintiff's allegations.

**Argument**

**I. Title IX applies to a private educational institution that receives federal financial assistance.**

Title IX prohibits sex discrimination in an education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a). The statute does not limit coverage to public schools. A private university that accepts federal funding—including through students' federal financial-aid funds—is subject to Title IX. *Doe v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Tex. 2017).

The Complaint expressly alleges that CIL receives federal financial assistance. Compl. ¶ 73. That allegation is accepted as true on a motion to dismiss. CIL's private status therefore supplies no basis to dismiss either Title IX claim.

**II. The Complaint plausibly alleges Title IX retaliation.**

The Supreme Court holds that retaliation against a person because she complains of sex discrimination is intentional discrimination prohibited by Title IX. *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005). In the Fifth Circuit, a Title IX retaliation claim requires allegations that the plaintiff: "(1) engaged in activity protected by Title IX; (2) suffered an adverse action; and (3) [that] a causal link exists between the protected activity and the adverse action." *Lewis v. Board of Supervisors of Louisiana State University*, 134 F.4th 286 (5th Cir. 2025).

Plaintiff alleges every element.

***A. Plaintiff engaged in protected Title IX activity.***

Plaintiff did more than complain of a generic interpersonal conflict. She reported a male student's sexually explicit statement directed at her, repeatedly identified herself as the target of sexually harassing conduct, reported a second degrading and sex-based statement toward another female student, and expressly identified Title IX concerns. Compl. ¶¶ 11, 17–19, 26. Reporting sexual harassment is protected activity under Title IX. *Doe v. Prairie View A&M University*, No. 4:17-CV-1957 (S.D. Tex. Apr. 25, 2018).

Plaintiff's protected activity also included opposing CIL's alleged unequal and dismissive response to sex-based misconduct. *Jackson* protects a person who speaks out against sex discrimination even when the initial discrimination concerns another person; Title IX does not require that the retaliation victim be the sole or direct target of the underlying discrimination. *Jackson*, 544 U.S. 167.

***B. Public removal, exclusion from class, and suspension of enrollment are materially adverse educational actions.***

Plaintiff alleges that CIL security escorted her from campus immediately after she reported the sexual harassment and challenged CIL's handling of it; CIL then suspended her for two days, prevented her from attending class, declined to count her attendance, and ultimately suspended her enrollment. Compl. ¶¶ 20–22, 27–28. Those actions plainly could dissuade a reasonable student from reporting sex discrimination. They also deprived Plaintiff of classroom instruction and program participation.

The Southern District of Texas rejected dismissal of a Title IX retaliation claim where a student who reported sexual harassment alleged that the institution imposed conduct

probation and a suspension. The court reasoned that a suspension remains adverse even if later rescinded. *Doe v. Prairie View A&M University*. Plaintiff's allegations are at least as substantial: the Complaint alleges removal by security, a two-day suspension, exclusion from class, and suspension of enrollment.

***C. The Complaint plausibly alleges causation and pretext.***

The alleged sequence supports a strong inference of causation. Plaintiff reported sexual harassment on September 19 and September 21; at the September 23 meeting, she reiterated that report and was told the conduct was "just profanity"; within minutes of attempting to return to class, security removed her from campus; CIL then suspended her. Compl. ¶¶ 14–22. Three days later, Plaintiff corrected CIL's pre-prepared incident narrative and again raised Title IX concerns, and CIL excluded her from class. Compl. ¶¶ 23–27. Four days later, CIL suspended her enrollment. Compl. ¶ 28.

The Complaint further alleges that CIL's proffered disciplinary process was not neutral: administrators allegedly minimized the sex-based conduct, assigned blame to Plaintiff by labeling her "aggressive," refused to acknowledge Plaintiff's factual corrections to the incident document, and imposed escalating discipline without neutral fact-finding. Compl. ¶¶ 18–19, 24–25, 31–32. At the pleading stage, these facts plausibly support the inference that the stated rationale for discipline was pretextual and that Plaintiff's Title IX-protected reports were a motivating factor in CIL's actions.

CIL cannot defeat causation by offering an alternative explanation at this stage. Unlike a complaint showing that the challenged action was already in place before protected activity, Plaintiff alleges that the removal, suspension, class exclusion, and enrollment

suspension began only after she reported sex-based harassment and challenged CIL's response. Compare *Bonnewitz v. Baylor University*, No. 6:21-cv-00491 (W.D. Tex. July 11, 2024) (recommending dismissal where the pleaded facts showed the student had been denied a tryout years before the asserted protected activity).

***D. The Complaint plausibly alleges institutional knowledge and intentional institutional action.***

Plaintiff's reports and CIL's discipline were handled by Chef Blair, Chef Christelle Pradat, and Chef Stephanie Lamour, the Director of the Cuisine Department. Compl. ¶¶ 12–26. The Complaint therefore alleges that CIL officials who received Plaintiff's reports and participated in the institutional response knew of the protected activity. It further alleges that CIL, through security and its departmental administrators, carried out the removal, suspension, class exclusion, and enrollment suspension. Compl. ¶¶ 20–22, 27–28.

These allegations are sufficient to plead institutional knowledge and intentional conduct by CIL. In all events, whether the identified CIL officials possessed final corrective authority, what notice they had, and the scope of their roles are fact questions that cannot be resolved against Plaintiff under Rule 12(b)(6).

**III. The Complaint also plausibly alleges sex-based peer harassment and CIL's deliberately indifferent response.**

For student-on-student harassment, a federally funded educational institution may be liable where it has actual knowledge of sex-based harassment within its control; the conduct is so severe, pervasive, and objectively offensive that it effectively denies

educational access; and the institution responds with deliberate indifference. *Sanches v. Carrollton–Farmers Branch Independent School District*, 647 F.3d 156 (5th Cir. 2011). The inquiry is fact-specific and depends on the particular setting, the relationship of the students, the content and frequency of the conduct, and its concrete educational effects.

***A. Plaintiff alleges sex-based conduct that is more than ordinary teasing or a private personal dispute.***

The Complaint alleges that Cesar directed a sexually explicit statement at Plaintiff and, on a different day, demeaned another female student by reference to her breasts. Compl. ¶¶ 11, 26. Plaintiff alleges that the remarks occurred in the educational environment, involved the same male student, were sex-based and unwelcome, and occurred in the context of a required classroom that Plaintiff could not avoid. Compl. ¶¶ 11–13, 17–19, 26–27.

CIL will likely characterize these allegations as isolated profanity. But the Complaint alleges more: repeated sexualized and gender-degrading comments by the same student toward female classmates; a report to CIL; a brief removal of the speaker followed by his return to class near Plaintiff; and an administrator's response that the sexualized language was "just profanity." Compl. ¶¶ 11–13, 17–19, 26. Whether the explicit sexual statement, the second sex-based remark, the nonoptional classroom environment, and CIL's alleged refusal to take the reports seriously collectively create an objectively hostile educational environment is not appropriately decided by recharacterizing the pleaded facts in CIL's favor.

The allegations are materially distinguishable from *Sanches*, where the Fifth Circuit considered a one-time indirect insult arising from a personal dispute over a boyfriend, together with conduct the court found to be teasing and bullying rather than sex-based harassment. *Sanches*, 647 F.3d 156. Here, Plaintiff alleges an explicit sexual statement directed to her, a separate body-based denigration of another woman by the same student, and CIL's institutional minimization of both reports.

***B. Plaintiff alleges a concrete denial of educational access.***

The Complaint alleges that Plaintiff could not avoid Cesar in the class environment after reporting his conduct because CIL returned both students to class in close physical proximity. Compl. ¶ 13. It further alleges that when Plaintiff continued to report sex-based misconduct and sought to ensure the record reflected what occurred, CIL removed her from campus by security, suspended her, barred her from class, refused to credit her attendance, and suspended her enrollment. Compl. ¶¶ 20–28.

These facts plausibly allege more than subjective offense. They allege loss of access to classroom instruction, attendance, and the culinary program itself. A Title IX claimant may plead educational deprivation through concrete interference with access to educational opportunities or through an environment that leaves the student vulnerable to continued harassment. *Doe v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Tex. 2017).

***C. The Complaint plausibly alleges deliberate indifference to known sex-based harassment.***

Plaintiff alleges that CIL had immediate notice of the September 19 incident because Chef Blair intervened; that Plaintiff provided a written statement at CIL's direction; that

she repeated her report in person to Chef Christelle and Chef Stephanie; and that she raised the additional sex-based statement by Cesar at the September 26 meeting. Compl. ¶¶ 12–18, 24–26. Despite that notice, CIL allegedly allowed Cesar back into class near Plaintiff, minimized the statement as "just profanity," took no meaningful corrective action against Cesar, and focused its coercive disciplinary response on Plaintiff. Compl. ¶¶ 13, 18–19, 22, 26, 30–32.

At the pleading stage, those facts permit a reasonable inference that CIL's response was not a good-faith effort to address known sex-based harassment but an official choice to discount it and punish the reporting student. CIL's asserted alternative characterization of the events raises factual issues for discovery and summary judgment, not a basis for dismissal.

**IV. The allegations of disparate discipline further support plausibility and pretext.**

The Complaint alleges that CIL retained Cesar in the program despite his documented conduct and permitted the student who physically assaulted Plaintiff to return to campus, while CIL rapidly suspended Plaintiff's enrollment after her reports and factual corrections. Compl. ¶¶ 10, 20–32. Plaintiff further alleges that CIL repeatedly applied the racially charged labels "aggressive" and "hostile" to Plaintiff, a Black woman, but did not subject non-Black students engaged in disruptive or violent conduct to comparable scrutiny. Compl. ¶¶ 9, 29–30.

Plaintiff does not rely on those allegations to convert this Title IX claim into a race-discrimination claim. Rather, they supply factual context supporting the plausibility of Plaintiff's allegations that CIL's stated disciplinary rationale was selectively applied and

pretextual. They reinforce the inference that CIL did not neutrally respond to the reported sex-based misconduct but instead discredited Plaintiff, minimized her report, and imposed escalating discipline after she engaged in protected activity.

**II. Contract Allegations Plausible, Alternatively, Plaintiff Should Receive Leave to Amend.**

Plaintiff respectfully submits that the Complaint provides fair notice of the contractual terms at issue. It alleges that CIL's enrollment agreement and Student Conduct Code required an investigation, notice of disciplinary allegations, an opportunity to submit a statement and respond, a hearing or other review process, and a fair determination before CIL could impose suspension or terminate enrollment. The Complaint further alleges the concrete ways CIL departed from those procedures: it required Plaintiff to submit a written statement, convened unannounced meetings, relied on a pre-prepared incident narrative that Plaintiff alleges was inaccurate, refused to acknowledge her corrections, removed her through security, suspended her, excluded her from class, and suspended her enrollment. Compl. ¶¶ 14–28, 31–32.

Rule 8 does not require Plaintiff to reproduce every contractual provision or include a section or page citation in the pleading. The allegations identify the documents, the procedural promises at issue, the alleged nonperformance, and the resulting injury. They therefore plausibly state a contract-based claim. See Exhibit A. CIL Student Catalog Vol. XV, Version iii, especially pages 5, 15-17, 55-56.

Alternatively, if the Court concludes that Plaintiff must identify the provisions of the enrollment agreement or Student Conduct Code with greater specificity, Plaintiff requests leave to amend under **Federal Rule of Civil Procedure 15(a)(2)**. That Rule provides that the Court should freely give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit likewise recognizes that, absent futility or other substantial reasons to deny leave, plaintiffs ordinarily should receive an opportunity to cure pleading deficiencies before dismissal. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Amendment would not be futile. Plaintiff can identify the operative enrollment agreement and Student Conduct provisions of the Catalogue, plead the specific mandatory provisions governing investigation, notice, response, hearing, review, and discipline, allege how those provisions were incorporated into the parties' agreement, and attach the complete operative documents if appropriate. Plaintiff has not previously amended the Complaint to address any purported deficiency; the case remains at the pleading stage; and CIL will suffer no undue prejudice from an amendment. Thus, if the Court finds the present allegations inadequate in any respect, the proper relief is leave to amend rather than dismissal with prejudice.

**III.The Complaint Plausibly Alleges a Negligent Undertaking, or at Minimum Supports Leave to Amend to Plead that Theory with Greater Particularity.**

A.Texas recognizes that a duty to use reasonable care arises when a person or entity undertakes, gratuitously or for consideration, to render services it knows or should know are necessary to protect another's person or property. *Torrington Co. v. Stutzman*, 46

S.W.3d 829, 837–40 (Tex. 2001). To establish such a claim, a plaintiff must allege that: (1) the defendant undertook services it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to use reasonable care in performing the undertaking; and (3) the plaintiff relied on the undertaking or the negligent performance increased the risk of harm. *Id.*

Here, Plaintiff alleges that CIL assumed responsibility for addressing the September 19, 2024 incident. CIL directed Plaintiff to prepare a written incident statement; summoned her to meetings to discuss the reported misconduct and CIL's response; had its chefs and Director of the Cuisine Department evaluate the report; used campus security to remove Plaintiff from the instructional setting; and invoked its disciplinary process to suspend Plaintiff and then suspend her enrollment. Compl. ¶¶ 12–28. Through those actions, CIL undertook to investigate, evaluate, and administer safety and disciplinary measures concerning the incident and Plaintiff's access to the program.

Plaintiff further alleges that CIL performed that undertaking without reasonable care. CIL allegedly minimized the reported sexually explicit conduct as "just profanity," returned Plaintiff and the male student to class in close physical proximity, relied on an inaccurate pre-prepared incident narrative, refused to acknowledge Plaintiff's written corrections, removed Plaintiff through security without meaningful notice, excluded her from class, denied attendance credit, and suspended her enrollment without the procedural measures CIL promised in its policies. Compl. ¶¶ 13–28, 31–32.

Those pleaded facts support an inference that CIL's undertaking increased Plaintiff's risk of harm by leaving the reported harasser in proximity to her while shifting the

institution's coercive response against Plaintiff, and that Plaintiff relied on CIL's undertaking by reporting the conduct, submitting the statement CIL requested, attending the meetings CIL scheduled, and returning to class after CIL permitted the students to do so. The resulting alleged injury includes lost access to instruction and the culinary program, lost attendance credit, tuition-funded educational benefits, and associated economic loss.

**B. The negligence claim is not an impermissible attempt to constitutionalize private-school discipline.**

Plaintiff does not premise her negligence claim on a standalone Fourteenth Amendment due-process duty. The claim rests on the narrower Texas common-law duty that arises from CIL's alleged voluntary undertaking of safety and disciplinary services, together with the alleged performance of those services in a manner that increased the risk of harm and deprived Plaintiff of promised educational access. The alleged procedural failures also inform the claimed breach of contract and Title IX retaliation, but they do not transform the negligence claim into a constitutional claim.

**C. Alternatively, Plaintiff requests leave to amend the negligence claim.**

If the Court concludes that the current allegations do not sufficiently identify the scope of CIL's undertaking, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2). Plaintiff can allege, consistent with Rule 11, additional facts concerning the specific services CIL undertook after receiving Plaintiff's reports; what CIL represented it would do; Plaintiff's reliance on those representations and directions;

how CIL's acts or omissions increased the risk of harm; and the concrete economic and educational injuries resulting from that negligent performance.

Plaintiff does not seek leave to replead a general special-relationship theory rejected in *Boyd*. Rather, she seeks leave, if necessary, to plead a properly particularized negligent-undertaking theory recognized by *Torrington*. Amendment would therefore not be futile. Plaintiff has not previously been afforded an opportunity to cure any pleading deficiency; the case remains at the pleading stage; and CIL will suffer no undue prejudice. Accordingly, if the Court finds the present allegations insufficient, it should grant leave to amend rather than dismiss Count V with prejudice.

**IV. Plaintiff Plausibly Alleges Intentional Race Discrimination Under Title VI**

**A. The Complaint alleges the elements of a Title VI claim.**

Title VI prohibits intentional discrimination on the ground of race, color, or national origin in a program or activity receiving federal financial assistance. 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275 (2001). The Complaint alleges that CIL receives federal financial assistance and that Plaintiff, an African American student, was subjected to disparate and materially adverse disciplinary treatment because of race. Compl. ¶¶ 101–107.

At the pleading stage, Plaintiff need not establish a complete evidentiary prima facie case or prove that she will ultimately prevail. The question is whether the pleaded facts plausibly support an inference of intentional discrimination. *Sewell v. Monroe City School Board*, 974 F.3d 577, 581–85 (5th Cir. 2020). In *Sewell*, the Fifth Circuit rejected

the application of a summary-judgment burden-shifting analysis to dismiss a Title VI discrimination claim at the pleading stage and held that allegations of selective enforcement against a Black student, coupled with discipline not imposed on students outside the protected class, plausibly alleged intentional discrimination. *Id.* at 582 & n.4.

**B. Plaintiff alleges concrete comparators and materially adverse disparate treatment.**

Contrary to Defendant's assertion, Plaintiff does not rely on a bare conclusion that non-Black students received more favorable treatment. The Complaint identifies a specific comparator: the **White female student** who physically assaulted Plaintiff on CIL's campus on or about March 21, 2024. Plaintiff promptly reported the assault to the Houston Police Department and to CIL administrators. Compl. ¶ 10. Although the reported physical assault resulted in a police report, CIL allegedly permitted the White assailant to return to campus and class, did not remove her through security, did not impose a comparable suspension or enrollment sanction, and did not take comparable corrective measures to protect Plaintiff. Compl. ¶¶ 10, 30.

The Complaint further alleges that Plaintiff—a Black woman who reported sexual harassment and disputed inaccuracies in CIL's account—was publicly removed from class and campus by security, immediately suspended, denied class access and attendance credit, and then suspended from enrollment. Compl. ¶¶ 20–28. It also alleges that CIL repeatedly labeled Plaintiff "aggressive" and "hostile" during disciplinary proceedings while not applying comparable scrutiny or sanctions to non-Black students who engaged in disruptive or violent conduct. Compl. ¶¶ 9, 29–30.

These facts permit the reasonable inference that CIL imposed materially more severe discipline on Plaintiff than it imposed on a non-Black student accused of physical violence. The relevant comparator is not whether CIL itself had authority to arrest the White student; arrest is a law-enforcement decision. The relevant allegations concern CIL's own acts: whether it removed the student from class or campus, suspended her, restricted her enrollment, and provided Plaintiff meaningful protection after a reported physical assault. Plaintiff alleges that CIL did not impose on the White assailant the severe educational sanctions it imposed on Plaintiff.

The Complaint also alleges that the male student Cesar—who made sexually explicit and degrading remarks—remained enrolled and active in the program while Plaintiff was removed, suspended, excluded from class, and ultimately suspended from enrollment after reporting his conduct. Compl. ¶¶ 11–13, 20–30. That allegation reinforces the plausibility of selective and pretextual enforcement. It is not the sole basis for the Title VI claim because the Complaint separately identifies the White female physical assailant as a comparator outside Plaintiff's protected racial class.

**C. The temporal sequence and race-coded characterization support a plausible inference of discriminatory intent.**

Intentional discrimination may be pleaded through circumstantial facts, including disparate enforcement, departure from ordinary procedures, shifting or unsupported discipline, and race-coded characterization. Plaintiff alleges that CIL administrators minimized her complaints, treated her account as unreliable, characterized her as "aggressive," declined to acknowledge her written corrections to the incident narrative,

removed her through security, and imposed escalating educational sanctions. Compl. ¶¶ 18–28, 29–32.

Taken together with the more favorable treatment alleged for the White student who physically assaulted Plaintiff, these facts plausibly support an inference that CIL's actions were not race-neutral enforcement of discipline but were motivated, at least in part, by Plaintiff's race. At the Rule 12(b)(6) stage, this Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. The Court may not weigh competing explanations for CIL's disparate disciplinary actions or resolve factual disputes regarding CIL's motive.

**D. The federal-funding allegation should be clarified, if necessary.**

Plaintiff alleges that CIL receives federal financial assistance through federal student-aid programs. Compl. ¶¶ 101, 103. That allegation is sufficient at the pleading stage if CIL participates in federal student-aid programs or otherwise directly receives federal education funds. Plaintiff does not rely on tax-exempt status or the alleged use or loan of public land as an independent basis for Title VI coverage. If the Court requires additional factual detail concerning CIL's federal financial assistance, Plaintiff requests leave to amend to identify the relevant federal student-aid or other funding programs in which CIL participates.

**E. Alternatively, Plaintiff requests leave to amend.**

If the Court concludes that the allegations require greater factual particularity regarding the White comparator, CIL's respective disciplinary decisions, CIL's federal financial

assistance, or the causal connection between Plaintiff's race and CIL's adverse actions, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2). Plaintiff can allege additional facts consistent with Rule 11 regarding the reported physical assault, the White assailant's return to campus and class, the absence of comparable CIL discipline, the racially differential use of "aggressive" and "hostile" labels, and the federal funds CIL receives. Amendment would not be futile, the case remains at the pleading stage, and Defendant will suffer no undue prejudice.

**V.Plaintiff's IIED Claim Should Not Be Dismissed with Prejudice**

**A. Texas recognizes IIED only as a narrow gap-filler tort.**

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege that Defendant acted intentionally or recklessly; the conduct was extreme and outrageous; the conduct caused emotional distress; and the distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Extreme and outrageous conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216–17 (Tex. 1999).

Texas courts also recognize that IIED is a narrow "gap-filler" tort. It is unavailable when the gravamen of the claim is conduct for which another statutory or common-law theory provides a remedy. *Zeltwanger*, 144 S.W.3d at 447–48. Thus, the availability of Title VI, Title IX, breach-of-contract, or negligence relief for the same acts may preclude an IIED claim even if Plaintiff ultimately does not prevail on those other theories. *Id.* at 447–49.

Applying that principle in the university context, the Western District of Texas dismissed an IIED claim that overlapped with Title IX and negligence theories. *Hernandez v. Baylor University*, 274 F. Supp. 3d 602 (W.D. Tex. 2017).

**B. The present IIED count may overlap with Plaintiff's other claims, but the appropriate relief is not dismissal with prejudice.**

Defendant correctly observes that several allegations presently incorporated into Count VI and VII—including alleged race discrimination, Title IX retaliation, failure to follow contractual procedures, and negligent administration of the disciplinary process—also support Plaintiff's Title VI, Title IX, breach-of-contract, and negligence claims. To the extent Plaintiff seeks IIED damages for the same conduct and the same injury that those specific theories redress, IIED is not an alternative means to enlarge or evade the remedies otherwise available.

But Defendant's reliance on *Brewerton* does not support dismissal with prejudice at the pleading stage. *Brewerton* held, on a developed record, that negative evaluations, a purportedly retaliatory nonrenewal, restrictions on a professor's speech regarding his personnel file, and an excessive workload did not meet Texas's exceptionally high extreme-and-outrageous threshold. *Brewerton*, 997 S.W.2d at 216–17. It does not establish that a private educational institution's intentional public use of security to remove a student, coupled with alleged fabrication or deliberate refusal to correct an official disciplinary record, retaliatory treatment, and conduct intended to humiliate or intimidate, can never support an independent IIED claim.

**Conclusion and Prayer**

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss the Title IX and Title IX retaliation claims, breach of contract claims, due process, negligence, IIED, in their entirety and grant Plaintiff all further relief to which she is entitled including leave to amend the Complaint.

Respectfully submitted,

**LLG National Law Group**
/s/ Renee Walker

Renee Walker

Texas State Bar No. 16958480

Phoenix Corporate Tower

3003 N Central Avenue - Suite 685

Phoenix, AZ 85012

Phone: 888-363-0011

Fax: 707.215.3600

Renee.Walker@llgnational.com

Attorney for Plaintiff

**Certificate of Service**

I hereby certify that on this 22nd day of September, 2026, a true copy of the foregoing Opposition to Plaintiff's Motion to Dismiss was served upon counsel for Defendants by EMF electronic filing system.

JAMES P. MCINERNY, ESQUIRE
Merkley Jones Eastham, PLLC
600 Travis Street, Suite 5000
Houston, Texas 77002
ATTORNEY FOR DEFENDANT

LLG National Law Group
/s/ Renee Walker
Renee Walker
Texas State Bar No. 16958480
Phoenix Corporate Tower
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 888-363-0011
Fax: 707.215.3600
Renee.Walker@llgnational.com
Attorney for Plaintiff